IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |
|---|---|
| EQUITY BANK, SSB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 06-0460-CG-B |
| ) | |
| CHAPEL OF PRAISE A.L.D.C.M., INC.; ) | |
| APOSTOLIC LATTER DAY CHRISTIAN ) | |
| MINISTRIES, INC.;  TEMPLE OF FAITH; ) | |
| and  ADMINISTRATOR of U.S. SMALL ) | |
| BUSINESS ADMINISTRATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff, Equity Bank, SSB ("Equity Bank"), for partial summary judgment (Doc. 43), the response thereto of the United States Small Business Administration ("SBA") (Doc. 52), plaintiff's reply (Doc. 54), the motion of defendant, SBA, for summary judgment (Doc. 47), plaintiff's response thereto (Doc. 53), and the SBA's reply (Doc. 55).  For the reasons explained below, the court finds that both motions are due to be **GRANTED in part** and **DENIED in part**.

## FACTS

This case arises from a dispute over the validity and priority of mortgages encumbering property located at 5413 Lott Road, Eight Mile, Alabama (the "Lott Road property").  Equity Bank moves for summary judgment as to Count III of its complaint which seeks to invalidate the SBA's mortgage and, in the alternative, to subordinate the SBA mortgage lien to the interest of Equity Bank.  SBA seeks summary judgment as to its Counterclaim/Cross-Claim alleging that

1

SBA's mortgage interest is superior to any interest alleged by Equity Bank. The parties do not dispute the basic facts, but argue for different legal results.

In 1996, Chapel of Praise, Inc.[1] filed Articles of Incorporation, listing its address as the Lott Road property. Chapel of Praise was conveyed title to the Lott Rd. property by Lott Road Baptist Church, Inc., by deed dated June 16, 1998. On June 16, 1998, Chapel of Praise granted a mortgage to SouthTrust Bank ("SouthTrust") securing a Note in the amount of $320,000. This mortgage was recorded in Mobile County Real Property Book 4595, Page 383, and granted a security interest in favor of SouthTrust on the Lott Road property. On August 27, 1999, Chapel of Praise granted a second mortgage to SouthTrust securing a Note in the amount of $50,000. This mortgage was recorded in Mobile County Real Property Book 4749, Page 989, and granted a security interest in favor of SouthTrust on the Lott Road property.

Chapel of Praise is related to Temple of Faith Apostolic Latter Days Christian Ministries, Inc., which operates a church located at 1360 Arlington Street, Mobile, Alabama.[2] In 2003, the

---

[1] It appears that Chapel of Praise, Inc. has since changed its name to Chapel of Praise Apostolic Latter Days Christian Ministries, Inc.

[2] It is unclear exactly how these two entities are related. According to the SBA, although there are different variations in the names used, there are only two distinct Church entities, the Chapel of Praise entity and the Apostolic Latter Days Christian Ministries entity. (Doc. 48, p. 2). The "Church History" states that "Temple of Faith Church" changed its name to "Temple of Faith Apostolic Latter Days Christian Ministries, Inc." in 1997 and became incorporated under that name in 1998. Apostolic Latter Days Christian Ministries reportedly filed Articles of Incorporation listing its address as 1360 Arlington St., Mobile, Alabama. Apostolic Latter Day Christian Ministries has been described as an umbrella organization over various churches. (Harper Depo. p. 54). According to the "Church History," "Chapel of Praise A.L.D.C.M. Inc.," was "adopted into the organization" in 2000. Ellis Harper testified that Temple of Faith and Chapel of Praise are in layman's terms: married to each other. (Holmes Affid. ¶ 1; Harper Depo. pp. 48-49). "Apostolic Later Day Christian Ministries is a ministry that Temple of Faith and Chapel of Praise use to distinguish their fellowship together." (Harper Depo. p. 51).

Arlington Street church and the Lott Road church sustained damages from Hurricane Ivan and applied to the SBA for a loan. (James Depo. p. 19).  On October 11, 2003, Apostolic Latter Days Christian Ministries, Inc. granted a mortgage to the SBA securing a Note in the amount of $408,600.  This mortgage was recorded in Mobile County Real Property Book 5479, Page 1865, and purports to grant a security interest in favor of the SBA on two parcels of property: the Arlington Street property and the Lott Road  property.  Ellis Harper is one of three people who signed the mortgage on behalf of Apostolic Latter Days Christian Ministries, Inc.[3]  Harper believed that the Lott Road property was owned by Apostolic Latter Days Christian Ministries and when he signed the mortgage documents he intended to grant the SBA a mortgage on the Lott Road property. (Harper Depo. pp. 23, 33, 56). This SBA mortgage was expressly made subject to the prior SouthTrust liens on the Lott Road property created by the 1998 Mortgage and 1999 Mortgage.  The mortgage was recorded on October 22, 2003, and was indexed under multiple names in the Grantor Index, including that of "Chapel of Praise, Inc." (Lloyd Depo. p. 28, ex. 6).

On November, 13, 2003, Temple of Faith, an unincorporated religious association, whose ministry was, and is, located on the Arlington St. property, granted a quitclaim deed to Apostolic Latter Days Christian Ministries, Inc. (the SBA's mortgagor) conveying all of its rights to the Arlington St. property to Apostolic Latter Days Christian Ministries, Inc. This quitclaim deed was recorded in Mobile County Real Property Book 5493, Page 1897.  No similar instrument appears of record as to the Chapel of Praise, and the record title for the Lott Road property

---

[3] There were two other signatories on behalf of Apostolic Latter Days Christian Ministries: Courtney Hatcher and Jevonn McIntosh.

remains vested in Chapel of Praise, Inc.

On December 2, 2003, Chapel of Praise A.L.D.C.M., Inc. granted a mortgage to SouthTrust securing a Note in the amount of $422,457.20. (Holmes Affid. ¶ 2). The primary purpose of this mortgage was to consolidate and refinance the 1998 and 1999 SouthTrust mortgages and the majority of the proceeds from the 2003 Mortgage were used to pay off the prior Mortgages. (Holmes Affid. ¶¶ 3-5). The 1998 and 1999 loans were paid in full and cancelled. (Knudsen Affid. ¶ 4). The 2003 SouthTrust mortgage is signed by the same individuals who executed the SBA mortgage, but this time their signatures were on behalf of Chapel of Praise, rather than Apostolic Latter Days Christian Ministries. The mortgage was recorded in Mobile County Real Property Book 5509, Page 973, and granted a security interest in favor of SouthTrust on the Lott Road property. When obtaining the 2003 Mortgage, SouthTrust was reportedly not aware of the October 11, 2003, SBA mortgage. The title work was dated in September and the commitment was dated in November and SouthTrust would not go back behind that to look for an intervening encumbrance. (Lloyd Depo. p. 28). The representative for Title Guaranty & Abstract Company testified that the title search relied on by SouthTrust was run by her company on September 23, 2003, 18 days prior to the SBA mortgage, and was not updated by her company prior to the December 2, 2003, SouthTrust Mortgage. (Lloyd Depo. pp. 35-37). There was nothing in the file on the SouthTrust mortgage to indicate that the title company or SouthTrust knew of the SBA loan or to indicate that a later title search had been completed before entering into the 2003 SouthTrust mortgage. (Lloyd Depo. p. 31). SouthTrust reportedly relied on the title company's research which predated the SBA Mortgage.

In November, 2004, Wachovia Bank, N.A. acquired SouthTrust by merger and succeeded

to all of SouthTrust's interests. (Knudsen Affid.).  On December 22, 2005, Wachovia sold a package of loans to Equity Bank which included the 2003 SouthTrust Mortgage.  This Assignment of Note, Mortgage and Loan documents was recorded in Mobile County Real Property Book 5905, Page 137.

## LEGAL ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving

party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

 Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Validity/ Reformation of SBA Mortgage**

There appears to be no dispute that Chapel of Praise did not have title to the Lott Road property when it granted a mortgage to the SBA.  It is axiomatic that one cannot convey greater title than he or she has.  However, the SBA argues that the mortgage should be reformed.  "'A court of equity has the power to reform a written instrument where, due to a mutual mistake, the

instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument.'" USAA Cas. Ins. Co. v. Threadgill, 729 So.2d 476, 478 (Fla. 4th DCA 1999) (quoting Providence Square Ass'n v. Biancardi, 507 So.2d 1366, 1369 (Fla.1987)).  "A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." Circle Mortgage Corp. v. Kline, 645 So.2d 75, 78 (Fla. 4th DCA 1994).  Due to the strong presumption that a written agreement accurately expresses the parties' intent, the party seeking reformation based on a mutual mistake must prove its case by clear and convincing evidence. See Resort of Indian Spring, Inc. v. Indian Spring Country Club, Inc., 747 So.2d 974, 976-77 (Fla. 4th DCA 1999). In addition, Alabama law allows for reformation because of mutual mistake only "insofar as this can be done without prejudice to rights acquired by third persons in good faith and for value." ALA. CODE. § 35-4-153 (1975).

In this case, the clear intention of the persons that executed the SBA mortgage was to grant the SBA a mortgage in the Lott Road property.  The individuals signing on behalf of the church entity mistakenly believed that they had used the name of the church entity that owned the property.  It is not surprising that there was some confusion as to which entity owned the property as the court after reading through the history and current status of the church entities involved in this case, has difficulty discerning the differences and relationships between the churches.  Equity Bank argues that it would be prejudiced by the reformation of the SBA mortgage.  However, third parties are not considered to have acquired rights in good faith if, despite the error, they had notice, constructive or otherwise, of the mortgage. In re Hagendorfer, 803 F.2d 647 (11th Cir.1986).  The mortgage can be reformed despite prejudice to third parties who are not bona fide purchasers for value. Id.

"A bona fide purchaser is one who (1) purchases legal title, (2) in good faith, (3) for adequate consideration, (4) without notice of any claim of interest in the property by any other party." Wallace v. Frontier Bank, N.A., 903 So.2d 792, 797 (Ala. 2004) (citations omitted).

"Notice sufficient to preclude a bona fide purchase may be actual or constructive or may consist of knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party." Id. (citation omitted).  "Those who acquire an interest in real property are put on constructive notice by our system of recordation of previously filed interests in the same property." Prestwood v. Weissinger, 945 So.2d 458, 462 (Ala.Civ.App. 2005) (citation omitted); see also ALA. CODE § 35-4-90 ("All ... mortgages ...to secure any debts are inoperative and void as to purchasers for a valuable consideration, mortgagees and judgment creditors without notice, unless the same have been recorded before the accrual of the right of such purchasers, mortgagees or judgment creditors.").  "A purchaser is chargeable with notice of what appears on the face of the instruments in his or her chain of title." Wallace, 903 So.2d at 797 (citation omitted).  Such constructive notice extends to all facts which could have been "ascertained by an actual examination of such record, not only of those recited in the record, but also of those as to which it reasonably suggests an inquiry, and which would be disclosed by such inquiry." Hagendorfer, 803 F.2d at 649 (quoting Stickney v. Dunaway & Lambert, 169 Ala. 464, 53 So. 770, 771 (1910)).

      In this case, Equity Bank's predecessor in interest, SouthTrust, reportedly did not have actual notice that the Lott Road property was encumbered by the SBA mortgage because SouthTrust relied on the title report which was prepared prior to the SBA mortgage.  However, SouthTrust is nevertheless bound by the prior recorded SBA encumbrance.  The mortgage was recorded on October 22, 2003, and was indexed under multiple names in the Grantor Index, including that of "Chapel of Praise, Inc."  The mortgage document also appears to sufficiently describe the Lott Road property.  Clearly, SouthTrust was at least put on inquiry notice that the Lott Road property was encumbered by the SBA mortgage.  As such, SouthTrust was not a bona fide purchaser and any prejudice to SouthTrust, or Equity Bank as its successor in interest, will not prevent reformation.

      The court finds that there is clear evidence that the SBA mortgage as drawn does not

accurately express the true intention or agreement of the individuals who signed the instrument due to their mutual mistake.  The instrument indicates that Ellis Harper, Courtney Hatcher, and Jevonn McIntosh signed the document and granted a mortgage on behalf of Apostolic Latter Days Christian Ministries, Inc., and the evidence indicates that they did so with the belief that Apostolic Latter Days Christian Ministries, Inc., had record title to the Lott Road property. Equity Bank cites Daniels v. Johnson, 539 So.2d 259 (Ala. 1989), to support its contention that reformation is not appropriate because Apostolic Latter Days Christian Ministries, Inc., did not own the property, and the mortgage cannot be reformed to somehow allow Apostolic Latter Days Christian Ministries, Inc., to grant a mortgage in property it does not own.  However, in this case, the individuals who signed the mortgage could have executed the document and granted a mortgage on behalf of Chapel of Praise, Inc., as evidenced by their grant of the 2003 SouthTrust mortgage only 6 weeks later.  The evidence clearly indicates that if the SBA and the individuals who signed the document had known that Chapel of Praise, Inc., owned the Lott Road property, they would have granted the Mortgage on behalf of Chapel of Praise, Inc., instead of Apostolic Latter Days Christian Ministries, Inc.,  Therefore, the court finds that the SBA mortgage can be reformed to state that Ellis Harper, Courtney Hatcher, and Jevonn McIntosh signed the document and granted the SBA a mortgage on behalf of the true title owner of the Lott Road property, as they clearly intended.

## C. Priority of Mortgages /Equitable Subrogation

Equity Bank contends that it has priority over the SBA on the Lott Road property through the doctrine of equitable subrogation.  The Court of Civil Appeals of Alabama has described the doctrine as follows:

> The doctrine of equitable subrogation provides that one who voluntarily loans money to a debtor to discharge a debt will "step into the shoes" of the former creditor. Subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation pays the obligation with the reasonable expectation of receiving a security interest in the property that has the same priority as the debt being discharged and if subrogation will not materially prejudice the holders of intervening interests in the property. See Restatement (Third) of Property § 7.6(b)

and comment e (1997).

> In order to be entitled to equitable subrogation, Alabama courts have historically held that one must meet the following requirements: (1) the money must be advanced in order to extinguish a prior encumbrance, (2) the money must be used for that purpose with the payor's expectation of obtaining a security interest of equal priority with the prior encumbrance, (3) the entire debt must be paid, (4) the payor must be ignorant of the intervening lien, and (5) the intervening lienor must not be "burdened or embarrassed." See Federal Land Bank of New Orleans v. Henderson, Black & Merrill Co., 253 Ala. 54, 59, 42 So.2d 829, 833 (1949).
>
> In addition, our Supreme Court has stated that " 'when a purchaser pays off a prior incumbrance as part of the purchase price without actual notice of a junior lien, ... equity will treat him as the assignee of the original incumbrance, and will revive and enforce it for his benefit.' " Shields v. Hightower, 214 Ala. 608, 610-11, 108 So. 525, 528 (1926). In order to qualify for relief under the doctrine of equitable subrogation, one "need not exercise the highest degree of care to discover an intervening incumbrance of the title, and mere constructive notice ... is not sufficient to preclude [one] from invoking the doctrine of equitable subrogation in the absence of culpable negligence." Whitson v. Metropolitan Life Ins. Co., 225 Ala. 262, 266, 142 So. 564, 567 (1932); see also Brooks v. Resolution Trust Corp., 599 So.2d 1163, 1165 (Ala.1992).

Lawson v. Brian Homes, Inc., — So.2d —, 2006 WL 2987937, *2 (Ala.Civ.App. Oct. 20, 2006).

In the instant case, the evidence indicates that the 2003 SouthTrust mortgage was used to pay off the prior 1998 and 1999 SouthTrust mortgages and that the entire debt of these two prior mortgages was satisfied.[4] To the extent the funds were used to pay off the prior loans, equitable subrogation will not materially prejudice the SBA because the SBA mortgage was expressly made subject to the prior SouthTrust liens. SouthTrust reportedly relied on the title company's research which predated the SBA Mortgage. The representative for Title Guaranty & Abstract Company testified that the title search relied on by SouthTrust was run by her company on

---

[4] At least one Alabama Court has held that complete satisfaction of the entire prior debt is not always necessary for subrogation. Mutual Life Ins. Co. of New York v. Grissett, 500 F.Supp. 159, 163 (M.D.Ala. 1980) ("If the justifications for the rule are lacking in a particular case, the court may grant subrogation despite the fact that there has been only a partial payment of the debt by the party seeking subrogation."). However, the Grisset Court gave priority only to the amount that was used to pay off the prior debt. Id. at 164.

September 23, 2003, 18 days prior to the SBA mortgage, and was not updated by her company prior to the December 2, 2003, SouthTrust mortgage.  The SBA speculates that it was likely that SouthTrust knew from a loan application or some other means that the SBA had advanced funds to repair hurricane damage.  However, there is no evidence that SouthTrust or Equity Bank actually knew of the SBA's intervening mortgage.  As stated in Lawson above, SouthTrust "need not exercise the highest degree of care to discover an intervening incumbrance of the title, and mere constructive notice ... is not sufficient to preclude [one] from invoking the doctrine of equitable subrogation in the absence of culpable negligence."  There is no evidence of culpable negligence in this case.

Therefore, the court finds that Equity Bank is entitled to equitable subrogation.  However, it is unclear exactly how much of the $422,457.20 loaned by SouthTrust in 2003 went towards paying off the prior loans.  The SBA would be prejudiced by subrogation of the 2003 SouthTrust mortgage to the extent it increased the indebtedness on the Lott Road property.  The new mortgagor steps into the shoes of the prior mortgagor and cannot thereby obtain priority over intervening liens for amounts above what was owed under the prior mortgage.  To allow subrogation of the entire new indebtedness would give the new mortgagor a windfall.  Bishop Arthur Holmes stated that the primary purpose of the 2003 SouthTrust loan was to refinance the prior mortgages and that the majority of the proceeds was used to pay off the prior mortgages.  However, there is no accounting or other evidence indicating more precisely the amount that went towards payment and refinancing of the prior mortgages vis-a-vis the amount that was used for other purposes.   The original amount owed on the prior mortgages totaled $370,000, but there is no evidence in the record of thepayments made, or penalties, interest, attorney's fees and costs charged under the prior mortgages.  Therefore, the court cannot determine what portion of the $422,457.20 loan should be given priority.

## CONCLUSION

The court finds that the SBA is entitled to reformation of its mortgage such that the SBA was granted a valid mortgage on behalf of the true title owner, as was clearly intended. The court also finds that Equity Bank is entitled to equitable subrogation to the extent the proceeds from its loan were used to pay off the prior SouthTrust indebtedness. Accordingly, SBA's motion for summary judgment (Doc. 47) seeking a determination that its mortgage interest is superior to any interest alleged by Equity Bank is **GRANTED**, but only to the extent that Equity Bank's interest exceeds the prior indebtedness represented by the 1998 and 1999 SouthTrust mortgages. Equity Bank's motion for summary judgment (Doc. 43) is **GRANTED** to the extent that the portion of Equity Bank's mortgage that represents the amount payed toward the prior SouthTrust 1998 and 1999 mortgages has priority over SBA's mortgage. The motions are **DENIED** in all other respects.

**DONE** and **ORDERED** this 31st day of July, 2007.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE